IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARRY SAMUEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civ. No. 05-037-SLR |
| v. | ) | |
| | ) | |
| THOMAS CARROLL, (WARDEN), LT. | ) | |
| PORTER, COUNSELOR KRAMER, and | ) | |
| the I.B.C.C. (CLASSIFICATION | ) | |
| COMMITTEE), and DENTAL SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

## STATE DEFENDANTS' MEMORANDUM OF LAW

**A.   FACTUAL AND PROCEDURAL HISTORY**

1.   Plaintiff, *pro se*, a prisoner currently incarcerated at Delaware Correctional Center ("DCC"), Smyrna, Delaware filed a Complaint on January 25, 2005 alleging that his Eighth Amendment Rights have been violated. (Complaint, D.I.2). Plaintiff is granted *informa pauperis* status in this action. Plaintiff seeks redress pursuant to 42 U.S.C. § 1983. Prison officials sued as State Defendants for alleged deprivations of his constitutional rights are the Warden at the Delaware Correctional Center, Lieutenant Porter, Correctional Officer Rob Young, and Counselor Kramer.

2.   Primarily, Plaintiff complains about his placement in the prison, specifically alleging that he has not been properly classified to a housing unit in accordance with better conduct and rehabilitation exhibited. (D.I. 2) In addition, Plaintiff alleges that he was denied such items as a toilet brush to clean the toilet for six months or a pillow on which to sleep thus creating a "health risk." (Id.) Along with his claims concerning a

health risk created by refusal to provide a toilet brush and pillow, Plaintiff complains that the dental department at DCC delayed his dental care for an unreasonable period of time, and that once treated, Correctional Officer Young forced him to sit in the dental chair with his hands cuffed behind his back. (Id.) Plaintiff alleges that sitting in the dental chair with his hands cuffed behind his back caused him pain in his arms and wrists. (Id.) Plaintiff seeks monetary compensation for alleged pain and suffering.

3.    On September 26, 2005, Plaintiff's complaint was dismissed in part as frivolous. (D.I. 23). Plaintiff filed a motion with the Court for reconsideration of its memorandum order partially dismissing his complaint (D.I. 24). The portion of Plaintiff's dismissed claim related to his classification issue previously raised. (Id.) Plaintiff followed-up his motion for reconsideration with a letter to the Court further detailing having to be handcuffed during his dental visits, and describing how the restraints caused him to suffer pain unnecessarily. (D.I. 28).

4.    On October 31, 2005, plaintiff filed an amended complaint against First Correction Medical, Correctional Medical Services, and Correctional Officer Rob Young. (D.I. 34).   Plaintiff alleges in his amended complaint that he submitted a sick call slip for medical treatment after enduring pain and injuries sustained from being handcuffed behind his back. (Id.) Plaintiff claims that he told the treating nurse "it feels like something is broke in shoulder and the pain and injuries is where I can't exercise because when I put pressure from exercising the pain gets worst."(Id.) Plaintiff alleges that the nurse instructed him to stop exercising, gave him a box of pain reliever and a cup of muscle cream, and advised him to put a warm towel on his hand. (Id.) Plaintiff claims that the nurse told him he may have a pinched nerve. (Id.)

5.      On November 16, 2005, Plaintiff's motion for reconsideration was granted as to the two health-related claims and denied as to the classification claim. (D.I. 36). Thereafter, the Court denied Plaintiff's second motion for reconsideration (D.I. 37), and informed Plaintiff that the Court would not entertain further motions for reconsideration on the classification issue. (D.I. 40). Service has been made as to State Defendants, and the motion to dismiss accompanied by this supporting memorandum is filed in response thereto.

**B.      STANDARD OF REVIEW**

6.      In order to analyze a motion to dismiss pursuant to Federal Civil Procedure Rule 12(b) (6), all factual allegations of the Complaint must be accepted as true, and the allegations must be construed in favor of the non-moving party. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**C.      PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES PURSUANT TO 42 U.S.C. §1997e**.

7.      State Defendants contend that dismissal of Plaintiff's claims is appropriate because he has failed to exhaust his administrative remedies. Prisoners are required to exhaust all administrative remedies before initiating a lawsuit pursuant to 42 U.S.C. § 1983. *See* Prison Litigation Reform Act (PLRA), 42 U.S.C. Section 1997e.  Indeed, this action is subject to the exhaustion requirements set forth in §1997e (a) which states in pertinent part

> No action will be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

*See also, Booth v. Churner*, 206 F.3d 289, 300 (3d Cir. 2000); *Ahmed v. Sromovski*, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000) (quoting *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000)).

8. The PLRA § 1997e exhaustion requirements are twofold. First, a prisoner complaint must pertain to conditions of his or her confinement. The Third Circuit Court of Appeals, interpreting prison conditions as defined in 18 U.S.C. § 3626(g) (2), refers "to the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." *Booth*, 206 F.3d at 294. Plaintiff has been incarcerated at the Delaware Correctional Center since the conditions complained of arose.

9. Secondly, prison officials must establish an administrative procedure to remedy prisoner complaints. The Third Circuit stated in *Jenkins v. Morton,* "[E]xhaustion promotes judicial efficiency in at least two ways. When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided. And, even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context." 148 F.3d 257, 259 (3d Cir. 1998) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 146 (1992).

10. The State of Delaware Bureau of Prisons has established an Inmate Grievance Procedure whereby "every inmate will be provided a timely, effective means of having

issues brought to the attention of those who can offer administrative remedies before court petitions can be filed." See State of Delaware Bureau of Prisons Procedure Manual, Procedure Number 4.4, Section II (revised May 15, 1998) attached hereto as Exhibit "A". The procedure establishes a three-step grievance process with two levels of appeal. Id. at § V. In order to exhaust all available administrative remedies, a prisoner must complete all stages of review and participate in the appeals process. Therefore the provisions of § 1997 (e) are applicable to him.

11.     The DCC maintains an inmate grievance process which permits prisoners to seek review of the problems they experience during their incarcerated time. This process is designed to provide review and resolution of prisoner grievances. The inmate grievance procedures are made available to every prisoner in the Departments custody. The inmates are required to file formal grievances and appeals to the Inmate Grievance Chair ("IGC") in addition to informal grievances in order to fully exhaust their administrative remedies.[1] After a written grievance is submitted to the IGC, [2] investigation into the matter will be initiated and informal resolution attempted. If informal resolution is unsuccessful, the inmate grievance resolution committee ("RGC")[3] will convene and a hearing will be held, culminating in a recommendation which is forwarded to the Warden or his designee ("Warden"). If the Warden and the grievant concur with the RGC recommendation, the

---

[1] "All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP." BOP 4.4 Section V.

[2] The grievance process begins when an inmate files a Form #584 which must be completed within 7 calendar days following the incident and forwarded to the IGC.

[3] The RGC is a committee comprised of institutional security staff, treatment staff, and inmate representatives that hears inmate grievances and makes a recommendation to the Warden/Warden's designee.

IGC closes the file and monitors issues of compliance. If the parties do not concur, the matter is referred to the Bureau Grievance Officer ("BGO"), who reviews the file. If the BGO concurs with the Warden's decision and the Bureau Chief of Prisons accepts the BGO recommendation, the IGC closes the file and monitors compliance. Alternatively, the BGO can attempt mediation between the grievant and the Warden or recommend outside review of the matter. See Exhibit "H".

12. The BOP procedure for inmate grievances also provides for an emergency grievance. An emergency grievance is defined as "an issue that concerns matters which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm." Id. at § IV. Such emergency grievances are expedited. Its procedure provides in relevant part:

> Issues that concern substantial risk of personal, physical or psychological inmate injury shall be addressed immediately by the Warden/Warden's Designee. A copy of the grievance shall be sent to the Inmate Grievance Chair upon receipt by the Warden/Warden's Designee. And the Warden/Warden's Designee shall respond within one calendar day. Grievant appeals of the Warden/Warden's Designee's decision will be decided by the Bureau Chief of Prisons within one calendar day upon receipt of the emergency appeal. NOTE: If the Warden/Warden's Designee should determine that the grievance does not meet the emergency criteria, the grievance shall be returned to the inmate for processing through the normal IGP process steps.

Id. at section V.

13. Although Plaintiff affirms that DCC has an inmate grievance procedure, (D.I. 2), he clearly denies ever presenting the facts relating to his complaint in the state prisoner grievance procedure. (D.I.2, part II B.). It is incontrovertible that Plaintiff never grieved the conditions of confinement to the institutional grievance chair** or the medical care he

received. In response to the question whether he presented the facts relating to his complaint in the state prisoner Grievance procedure, he checked the box "NO" and wrote "because authorities said I can't." (Id.) Essentially, Plaintiff contends that filing a grievance would have been futile. However, futility does not excuse the exhaustion requirements under the PLRA. See *Nyhuis v. Reno*, 204 F.3d at 71. "The PLRA requires an inmate to exhaust all administrative remedies prior to bringing a federal action challenging prison conditions, whether or not they provide the relief the inmate says he or she desires in the federal action." *Id.* Plaintiff admits that he did not file a grievance. Moreover, there is no dispute that Plaintiff was familiar with the inmate grievance procedures.

14. In the instant case, Plaintiff cannot show that he exhausted available administrative remedies with regard to his allegations of inhumane and unsanitary living conditions. The Plaintiff did not file, as required at the institutional level, a grievance which described the "unhealthy and unsanitary" living conditions for which he now complains. Clearly, Plaintiff cannot offer genuine evidence to demonstrate that he exhausted available remedies prior to filing this action. It is therefore "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46.

**D. WARDEN CARROLL, COUNSELOR KRAMER, AND LIEUTENANT PORTER HAD NO ACTUAL KNOWLEDGE OF AND DISREGARDED AN EXCESSIVE RISK TO INMATE'S HEALTH OR SAFETY.**

15. Plaintiff alleges that State Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by their "deliberate indifference" to

his medical needs and need to be relieved from pain and suffering. Also Plaintiff claims that by denying him a pillow to sleep and a toilet brush for cleaning he was subjected to unsanitary living conditions posing health risks. (Complaint, passim).

16.     The Eighth Amendment deliberate indifference analysis for prison conditions is set forth in *Farmer v. Brennan,* 511 U.S. 825 (1994). In order to state a claim that defendant-prison officials acted with "deliberate indifference" in denying him humane conditions of confinement, Plaintiff must (1) identify with particularity what State Defendants failed to do that constituted deliberate indifference, and (2) establish a close causal relationship between the identified deficiency and his ultimate injury. *See Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989).

17.     To the extent Plaintiff seeks to hold these Defendants liable based on their supervisory responsibilities, the Doctrine of *Respondeat Superior* is not a basis for liability in an action under 42 U.S.C. §1983.  *Sample v. Diecks*, 885 F.2d at 1099. Without a doubt, Plaintiff cannot hold State Defendants liable for a constitutional violation solely due to their supervisory positions. *Id.* The law is clear a person in a supervisory position cannot be the moving force behind a constitutional violation of a subordinate unless the supervisor exhibited deliberate indifference to the plight of the person deprived. *Sample*, 885 F.2d at 1099.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff must show actual knowledge by the official of the existence of a substantial risk of harm and that the official had considered the possibility that the risk could cause serious harm. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001)

(quoting *Farmer*, 511 U.S. at 846). Nonetheless, for a Plaintiff to establish personal involvement, he must allege personal direction or actual knowledge and acquiescence with particularity. *Rode v. Dellarciprete*, 845 F.2d at 1207.

18. Plaintiff's claim against State Defendants Carroll, Kramer or Porter does not demonstrate any personal involvement by these prison officials. *Id.* Clearly it is Plaintiff's burden to identify how the State Defendants participated in, directed, or acquiesced to the events of the Plaintiff complaint. *Gay v. Petscok*, 917 F.2d 768, 771 (3d. Cir. 1990). In this case, the Plaintiff fails to meet his burden. He has not identified any affirmative part in any misconduct by State Defendants Carroll, Kramer or Porter. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). He does not make any allegations in his statement of claim that any of these defendants denied him a pillow or a toilet brush to clean his toilet. Nor does Plaintiff identify with particularity that the State Defendants denied him dental treatment. Aside from his claims related to the issue of classification already decided by this Court, Plaintiff does not identify how they allegedly violated any of his constitutional rights.

19. Undeniably, the facts alleged against Carroll, Kramer or Porter are insufficient to assess liability merely based on their supervisory roles. *Id.* Plaintiff does not allege in his complaint that Carroll, Kramer, Porter or Young had a direct role in depriving him of a "single identifiable human need such as food, warmth, or exercise," which presented a risk of serious physical harm to his health. *Wilson v. Seiter*, 501 U.S. 294, 303-304 (1991).

20. Aside from the fact that Counselor Kramer wrote Plaintiff explaining his classification to maximum security and advising him of the available treatment services

(Ptf's Exhibit 17), he does not raise any claim that Counselor Kramer was aware of and deprived him of a toilet brush rendering him unable to clean the toilet for six months or that Kramer refused to provide him a pillow making it difficult for him sleep. His complaint is silent as to how Kramer was responsible for subjecting him to any risk of serious physical harm. *Farmer v.* Brennan, 511 U.S. 825, 834 (1994).

21.     In addition, Plaintiff attaches two letters dated October 26, 2001 and November 20, 2001 written by Warden Carroll. Those letters concerned Plaintiff's dispute over a $4.00 co-payment for dental services he received in 2001. (D.I.22) The letters informed Plaintiff that the matter was referred to the medical provider for review and action. (Id.) Those letters do not direct the treating medical providers to take a specific course of action, more specifically, they do not tell the medical providers to place braces on Plaintiff's teeth. (Id.) Plaintiff acknowledges that he was seen by a dentist on more than one occasion and that he received filling for his decayed tooth. (D.I. 22). Plaintiff, again, fails to allege how Warden Carroll acted with deliberate indifference to his dental condition, or that he acted specifically to deprive Plaintiff of "a single human need." *Wilson v. Seiter*, 501 U.S. at 303-304.

22.     Moreover, to the extent that Plaintiff seeks to hold Lieutenant Porter liable for his medical conditions or unsanitary housing condition, he has not alleged a violation of his Eighth Amendment right. It appears that Plaintiff's claims against Porter surround the classification placement for which no constitutional violation has occurred. Porter was one of the classification committee members who voted on Plaintiff's institutional classification placement in 2004. In short, Plaintiff offers nothing to demonstrate that these defendants participated in or approved of a risk to his health or safety.

23. Plaintiff's efforts to impose a supervisor liability claim under the Eighth Amendment are insufficient. *See, e.g., C. H. ex. rel. Z.H. v. Oliva*, 226 F.3d 198, 201-02 (3d. Cir. 2000) (en banc) ("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."). Indeed, in order to establish supervisory liability, any misconduct of the correction officers must be "affirmatively linked" to the actions or inactions of the prison officials. *Rizzo v. Goode*, 423 U.S. at 371.

E.  **CORRECTION OFFICER YOUNG HAD NO ACTUAL KNOWLEDGE OF AND DISREGARDED AN EXCESSIVE RISK TO INMATE'S HEALTH OR SAFETY.**

24. Given Plaintiff's status as an inmate classified to maximum security, he cannot show that Defendant Young displayed deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plaintiff cannot show that Defendant Young's actions constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." *Id.* Certainly, Plaintiff's complaint nowhere presents sufficient facts to support a determination that Defendant Young showed deliberate indifference to any particular harm, or that he acted with indifference to an obvious risk of harm created by Plaintiff's placement in handcuffs during his movement throughout the prison. *See Farmer v. Brennan*, 511 U.S. at 837.

25. Without a doubt, Plaintiff acknowledges that he has displayed a pattern of behavior that warranted his classification to maximum security. (See, Complaint, *passim*). As such, upon his classification to the Security Housing Unit, maximum security confinement, the institutional rules and regulations required that he be handcuffed and shackled whenever leaving his assigned area and escorted by a correctional officer. See Inmate Housing Rules For The Security Housing Unit attached hereto as Exhibit "B".

The housing rules also state "[i]nmates Shall be cuffed and un-cuffed with arms to the rear." Id. at section XV., General Conduct/Rules, subpart C.

26.     To state a claim under the Eighth Amendment for cruel and unusual punishment arising from placement in wrists restraints at all times that the prisoner is away from his cell, and he must demonstrate that the Defendant Young, caused unnecessary or wanton pain on him. He must show that this officer knew of his condition and chose to ignore a substantial risk to his health and safety. *See Farmer v. Brennan*, 511 U.S. at 837.

28.     The record indicates prison officers determined to place Plaintiff in a more secure housing unit. (D.I. 2). It stands to reason, prison officials believed that Plaintiff's behavior warranted reclassification to address behavior issues. (Id.) As Plaintiff states in his complaint, "I have to be hand cuff every where I go, to the shower to visits, to the Dentist, . . ." (D.I. 2, Complaint).

29.     In fact, the SHU rules requiring inmates be restricted when outside of their assigned areas and escorted by a correctional officer clearly outline a legitimate purpose. Indisputably, the need to secure inmates in restrictive housing for the supervision of these individuals with respect to behavior is reasonably related to a legitimate penological objective. ("The ultimate goals of the SHU are to enhance self-reliance, self-control, self-respect, and self discipline thereby improving the inmate's quality of life.") *See Turner v. Safely*, 482 U.S. 78, 89 (1987).

30.     Clearly, not one of the Defendants' actions demonstrates a sufficiently culpable state of mind from which deliberate indifference may be inferred resulting in the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. at 294.

31.     Although Plaintiff may not agree with the SHU rules or the care that was provided

to him by the dental staff, he can not support an Eighth Amendment claim against the prison official who escorted him for medical attention.

  **F.**  **OFFICIAL CAPACITY AND SOVEREIGN IMMUNITY**

32.  A §1983 suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, the State Defendants in their official capacity is not a "person" for the purposes of 42 U.S.C. §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, this Court lacks jurisdiction over the State Defendants in their official capacity as the State Defendants are outside the class of persons subject to liability under 42 U.S.C. § 1983. Therefore, dismissal is appropriate.

33.  Furthermore, State Defendants are entitled to qualified immunity because they acted in good faith, without gross or wanton negligence, in the performance of their discretionary duties. *Vick v. Haller*, 512 A.2d 249 (1986).

34.  To the extent that Plaintiff attempts to hold State Defendants liable in their individual capacities for alleged tortuous acts, the State Tort Claims Act shields these State Defendants. It is the Plaintiff's burden to prove the absence of one or more of the elements of the immunity. 10 Del. C. §4001. As the Plaintiff has failed to meet his burden, the complaint should be dismissed.

                              **STATE OF DELAWARE**
                              **DEPARTMENT OF JUSTICE**

                              /s/ Ophelia M. Waters
                              Ophelia M. Waters
                              Deputy Attorney General
                              Carvel State Office Building
                              820 North French Street, 6th fl.
                              Wilmington, DE 19801
                              (302) 577-8400
Dated: March 8, 2006               ophelia.waters@state.de.us

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2006, I electronically filed the Defendants *Motion to Dismiss with memorandum of points and authorities,* with the Clerk of Court using CM/ECF. I hereby certify that on March 8, 2006, I have mailed by United States Postal Service, the document to the following non-registered participant: Harry Samuel; SBI#; 00201360, Delaware Correctional Center, 1181 Paddock Rd, Smyrna, DE 19977.

                                        /s/ Ophelia M. Waters
                                        Ophelia M. Waters, I.D. No.3879
                                        Deputy Attorney General
                                        Carvel State Office Building
                                        820 North French Street, 6th Floor
                                        Wilmington, Delaware 19801
                                        (302) 577-8400