IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HARRY L. SAMUEL,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civ. No. 05-037-SLR
                                    )
FIRST CORRECTIONAL MEDICAL,         )
et al.,                             )
                                    )
            Defendants.             )

---

Harry L. Samuel, Delaware Correctional Center, Smyrna, Delaware.
Pro se Plaintiff.

Ophelia Michelle Waters, Esquire, Delaware Department of Justice,
Wilmington, Delaware.  Counsel for Defendants Warden Thomas
Carroll, Lt. Porter, Counselor Kramer, I.B.C.C., and Rob Young.

Kevin J. Connors, Esquire, Marshall, Dennehey, Warner, Coleman &
Goggin, Wilmington, Delaware.  Counsel for Defendant Correctional
Medical Services.

Daniel L. McKenty, Esquire, and Dana Spring Monzo, Esquire,
McCullough & McKenty, P.A., Wilmington, Delaware.  Counsel for
Defendant First Correctional Medical.

---

**MEMORANDUM OPINION**

Dated:  December ╫ , 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On January 10, 2005, Harry L. Samuel, a pro se plaintiff
proceeding in forma pauperis ("plaintiff"), filed the present
action against Warden Thomas Carroll, Lieutenant Porter,
Counselor Kramer, Correctional Officer Robert Young (collectively
"State defendants"), the I.B.C.C. (Classification Committee),
Correctional Medical Services, Inc. ("CMS"), and First
Correctional Medical ("FCM"). (D.I. 2) Plaintiff is, and has
been at all times relevant hereto, incarcerated at Delaware
Correctional Center ("DCC") in Smyrna, Delaware. (Id. at 2)  In
his complaint, plaintiff contends that defendants have breached
his constitutional rights in violation of 42 U.S.C. § 1983[1] by:
(1) failing to classify him correctly, despite his improved
conduct and rehabilitation;[2] (2) failing to provide him with a

---

[1]The statute provides, in pertinent part:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage of any State
or Territory . . . subjects, or causes to be subjected,
any citizen of the United States to the deprivation of
any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in the action at law, suit in equity, or other
proper proceeding for redress.

42 U.S.C. § 1983.

[2]The vast majority of plaintiff's complaint and related
submissions to the court have dealt with his claim of abuse of
discretion on the part of the Classification Committee.  The
court disposed of this claim as frivolous under 28 U.S.C. §
1915A(b) in earlier memorandum orders. (D.I. 23, 36, 40)  In
addition, the docket is replete with letters from plaintiff

toilet brush and pillow; (3) forcing him to wait almost one year for a dental appointment to fill his decayed tooth; and (4) forcing him to wear handcuffs during a dental appointment which has resulted in painful injuries.  (D.I. 2 at 3)  Plaintiff requests damages in the amount of $100,000 or "what the court will [allow]."  (Id. at 4)  The court has jurisdiction over the present suit pursuant to 28 U.S.C. § 1331.  Presently before the court are two separate motions to dismiss filed on behalf of the State defendants and CMS, respectively.[3]  (D.I. 53, 60)  For the reasons that follow, the court grants defendants' motions to dismiss.

## II.  BACKGROUND

In the late summer of 2004, plaintiff began experiencing some pain and discomfort with one of his teeth.  He believed that his tooth filling had fallen out, so he put in a sick call slip at the prison on September 3, 2004, requesting dental treatment. (D.I. 77 at 4)  When one month had passed and plaintiff still had

---

updating his condition and making complaints of being "left in the shower" for too long and having "light in [his] eyes all day" that cause him stress.  (D.I. 9)  The court will not address plaintiff's submissions relating to dismissed claims or claims that have not been presented in an amended pleading filed pursuant to Fed. R. Civ. P. 15.

[3]On November 15, 2006, this court denied as moot plaintiff's motion for default judgment against all defendants (D.I. 56). (D.I. 97)

2

not seen a dentist, he filled out another sick call slip on October 2, 2004.  (Id. at 5)

Plaintiff was seen by the dental assistant on October 7, 2004; she told him that he would have to wait eight to nine months for a filling.[4]  (D.I. 31 at 3, D.I. 77 at 4)  This explanation was not satisfactory to plaintiff, and he submitted a grievance report that same day.  (D.I. 2)   The Bureau Grievance Officer received plaintiff's grievance on February 22, 2005, and issued his decision on March 17, 2005, recommending that "First Correctional Medical resolve the dental services availability problem."  (Id.)  The officer also reported that "inordinate delays lead to more serious and expanding medical related issues," and declared "an 8 to 9 month wait for tooth repair is unacceptable."  (Id.)  The Bureau Chief concurred with the recommendation of the Bureau Grievance Officer.  (Id.)  Several more months passed and plaintiff still had not had his tooth filled.  He submitted another dental sick call form on June 9, 2005, reiterating that his tooth filling had come out nine months before and he still had not received adequate treatment.  (D.I. 18 at 1)

On July 1, 2005, defendant CMS became the contract medical provider for DCC.  (D.I. 34 at 1)  Plaintiff had his tooth filled

---

[4]At this time, First Correctional Medical was the contract medical provider for DCC.

3

on September 7, 2005. According to plaintiff, the dentist said "plaque developed around the tooth, and [ate] some of the bone away that hold[s] the tooth." (D.I. 22 at 1) Plaintiff claims this condition made it feel like there was a "big hole in [his] tooth" and seriously affected his ability to eat and talk. (D.I. 19 at 5, D.I. 72)

Plaintiff also complains of injuries to his arm, shoulder, and wrist, resulting from being handcuffed while receiving treatment during a "medical grievance dental examination" on November 2, 2004. (D.I. 28, 72) Plaintiff had to "sit on [his] hands and handcuff[ed] in the dentist chair." (D.I. 2 at 5) Plaintiff requested that Correctional Officer Rob Young remove the handcuffs during dental treatment, but Officer Young refused to do so. (D.I. 34 at 1) Plaintiff waited approximately ten months "to see if the pain and injuries . . . would go away," but in September 2005 he put in a medical sick call to see the doctor regarding his injuries from being handcuffed; he was seen by a nurse on October 5, 2005. (D.I. 28 at 1) Plaintiff claims to have told the nurse "it feels like something is broke[n] in [my] shoulder." (Id.) The nurse instructed him to stop exercising and gave him a box of pain reliever and a container of muscle cream. (Id.) Plaintiff alleges the nurse also stated that he might have a pinched nerve. (Id. at 2)

4

In addition to the claims involving his dental treatment, plaintiff alleges that he was subject to unsanitary and inhumane conditions for not being provided a toilet brush and pillow. He complained to the unit sergeant and wrote request letters for these items. Plaintiff claims he was unable to clean his toilet for six months, which created a health risk. He also contends that similarly situated inmates were issued a pillow, and that the lack thereof made it difficult for him to sleep. (D.I. 39 at 1)

**III. Exhaustion of Administrative Remedies**

Plaintiff alleges that the denial of items such as a toilet brush and pillow violated his constitutional rights under the Eighth Amendment. (D.I. 2) State defendants contend that this claim should be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing this action, as required under the Prison Litigation Reform Act ("PLRA"). (D.I. 54 at 3; 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [§ 1983] by a prisoner . . . until such administrative remedies as are available are exhausted."))

Exhaustion is mandatory, and prisoners must exhaust administrative remedies for any claim that arises within the prison, regardless of any limitations on the kind of relief available through the grievance process. Porter v. Nussle, 534 U.S. 516, 532 (2002). The purpose of the exhaustion requirement

5

is "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Spruill v. Gillis, 372 F.3d 218, 227 (3d Cir. 2004).

In the instant case, plaintiff claims that he "complained to the unit [sergeant] and lieutenant about cell conditions and pillow [sic]." (D.I. 80) However, plaintiff never challenged the conditions of his confinement through the state prisoner grievance system. (D.I. 2) Plaintiff was aware that a grievance procedure was in place, as he properly used the grievance system with respect to his dental treatment problems. (Id.) Therefore, plaintiff's claim regarding his conditions of confinement is dismissed.[5]

## IV. STANDARD OF REVIEW

Because the defendants have referred to matters outside the pleadings, defendants' motions to dismiss shall be treated as motions for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure.[6] Fed. R. Civ. P.

---

[5]Even if plaintiff had exhausted his administrative remedies, this court does not find that the temporary deprivation of a pillow and toilet brush rises to the level of a constitutional violation under 42 U.S.C. § 1983.

[6]Specifically, defendants have referenced the following documents: D.I. 54, ex. B (inmate housing rules for security

6

12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine,' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." <u>Horowitz v. Fed. Kemper Life Assurance Co.</u>, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (<u>quoting</u> Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some

housing unit); D.I. 60, ex. D (admission by plaintiff that his tooth was filled on September 7, 2005).

7

evidence in support of the nonmoving party, however, will not be
sufficient for denial of a motion for summary judgment; there
must be enough evidence to enable a jury reasonably to find for
the nonmoving party on that issue. See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party
fails to make a sufficient showing on an essential element of his
case with respect to which he has the burden of proof, the moving
party is entitled to judgment as a matter of law. See Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, the
court must grant summary judgment if the party responding to the
motion fails to make a sufficient showing on an essential element
of his case with respect to which he has the burden of proof.
See Omnipoint Comm. Enters., L.P. v. Newtown Township, 219 F.3d
240, 242 (3d Cir. 2000) (quoting Celotex, 477 U.S. at 323).

## V.   DISCUSSION

### A.   Plaintiff's Claim for Injuries Sustained While Handcuffed During Dental Treatment

Plaintiff contends that his constitutional rights were
violated when he was forced to be handcuffed while receiving
dental treatment.[7] (D.I. 2) Plaintiff contends that there was no
need to restrain him, and that this action constituted an

_____

[7]It is not clear from the record what plaintiff's specific
claim is. The court interprets this to be a claim alleging cruel
and unusual punishment under the Eighth Amendment.

8

"unnecessary and wanton infliction of pain and disco[m]fort and lack of dignity [sic]." (D.I. 80)

Whenever a plaintiff claims that a prison official used excessive physical force, thus violating the Cruel and Unusual Punishment Clause, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)) (as cited in Whitley v. Albers, 475 U.S. 312, 320 (1986)). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

In analyzing a claim under the Eighth Amendment, the court must consider: 1) the need for the application of force; 2) the relationship between the need and the amount of force that was used; 3) the extent of injury inflicted; 4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and 5) any efforts made to temper the severity of a forceful response. See Whitley, 475 U.S. at 321.

9

Applying these rules to case at bar, the court finds that plaintiff's constitutional rights were not violated by the use of handcuffs during dental treatment. Plaintiff was a maximum security inmate in a Delaware prison. (D.I. 2) The institution's rules and regulations state that "inmates shall be handcuffed and shackled whenever leaving their assigned area . . . ." (D.I. 54, ex. B) The rules also state that "inmates shall be cuffed . . . with arms to the rear." (Id.) Plaintiff admitted in his complaint that he has to be handcuffed everywhere he goes. (D.I. 2) This court finds that restraining plaintiff with shackles and handcuffs during his dental treatment was a routine security measure in the prison. There is nothing in the record to indicate that the officer was acting with a culpable state of mind by not removing plaintiff's handcuffs and, in fact, he was under no duty to do so. The officer was simply following appropriate prison protocol.[8] Therefore, plaintiff's claim for cruel and unusual punishment with regard to being handcuffed during dental treatment is denied.

**B.   Plaintiff's Claim Regarding Delay in Dental Treatment**

It is undisputed that the State of Delaware has an obligation under the Eighth Amendment to provide "adequate

---

[8]The court takes judicial notice in this regard as to the close proximity of the medical care provider and his or her dental instruments to the inmate during dental examinations and treatments, certainly a situation calling for security measures to be imposed.

10

medical care" to individuals who are incarcerated in its prisons. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (citations omitted).  To state a violation of his constitutional right to adequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976); accord White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).  Plaintiff must demonstrate that: (1) he had a serious medical need; and (2) the defendant was aware of this need and was deliberately indifferent to it.  See West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978); see also Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).  Either actual intent or recklessness will afford an adequate basis to show deliberate indifference.  See Estelle, 429 U.S. at 105.

The seriousness of a medical need may be demonstrated by showing that the need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious."  Id.

Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an

11

official bars access to a physician capable of evaluating a prisoner's need for medical treatment.  Id. at 347.  An official's conduct, however, does not constitute deliberate indifference unless it is accompanied by the requisite mental state.  Specifically, "the official [must] know . . . of and disregard . . . an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Third Circuit has found "deliberate indifference" in a variety of circumstances, including where a prison official:  (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. See Durmer v. Carroll, 991 F.2d 64, 68 (D. N.J. 1993) (citing Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987)).  When denial of an inmate's request for medical care causes "undue suffering or the threat of tangible residual injury, deliberate indifference is manifest."  Monmouth, 834 F.2d at 346.  However, mere medical malpractice is insufficient to present a constitutional violation.  Estelle, 429 U.S. at 106.

It appears from the record that plaintiff had to wait a
substantial amount of time before receiving adequate dental
treatment.  After experiencing some pain with one of his teeth,
plaintiff filed an initial sick call slip requesting dental
treatment on September 3, 2004.  (D.I. 77 at 4)  He was seen by a
dental assistant on October 7, 2004, and she informed plaintiff
that he would have to wait eight to nine months for a tooth
filling.  (D.I. 31 at 3; D.I. 77 at 4)  Plaintiff followed the
applicable grievance procedures and the Bureau Grievance Officer
agreed with plaintiff, finding that "an 8 to 9 month wait for
tooth repair is unacceptable."  (D.I. 2)  When FCM's contract as
the medical provider for Delaware's prisons expired on June 30,
2005, plaintiff had still not received the required treatment.
(D.I. 34)  Plaintiff had his tooth filled on September 7, 2005,
by the staff of CMS.  (D.I. 60)

While it is not apparent whether this delay in dental
treatment amounts to deliberate indifference and a material fact
remains in issue with regard to the conduct of FCM, this court
finds that liability does not lie with the State defendants nor
with CMS.  Therefore, plaintiff's claim of deliberate
indifference is denied as to the State defendants and CMS.

## VI.  CONCLUSION

For the reasons stated above, State defendants' motion to
dismiss is granted.  In addition, defendant Correctional Medical

13

Services' motion to dismiss is granted.  An appropriate order

shall issue.