IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARRY L. SAMUEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-037-SLR |
| | ) |
| THOMAS CARROLL, LT. PORTER, | ) |
| COUNSELOR KRAMER, THE IBCC, | ) |
| ROBERT YOUNG, CORRECTIONAL | ) |
| MEDICAL SERVICE, and FIRST | ) |
| CORRECTIONAL MEDICAL, | ) |
| | ) |
| Defendants. | ) |

Harry L. Samuel, Delaware Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Ophelia Michelle Waters, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Carroll, Porter, Kramer, IBCC, and Young.

Kevin J. Connors, Esquire, Marshall, Dennehey, Wagner, Coleman & Goggin, Wilmington, Delaware. Counsel for Defendant Correctional Medical Service.

Daniel L. McKenty, Esquire, Heckler & Frabizzio, Wilmington, Delaware. Counsel for Defendant First Correctional Medical.

**MEMORANDUM OPINION**

Dated: August 28, 2007
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On January 10, 2005, Harry L. Samuel, a pro se plaintiff proceeding in forma pauperis ("plaintiff"),[1] filed the present action against: DCC Warden Thomas Carroll, Lieutenant Porter ("Porter"), Counselor Kramer ("Kramer"), and Correctional Officer Robert Young ("Young") (collectively, the "State defendants"); the Institutional Based Classification Committee ("IBCC"); Correctional Medical Services, Inc. ("CMS"); and First Correctional Medical ("FCM"). (D.I. 2) Plaintiff amended his complaint on October 31, 2005.[2] (D.I. 34) Plaintiff contends that defendants breached his constitutional rights in violation of 42 U.S.C. § 1983[3] by: (1) failing to classify him correctly, despite his improved conduct and rehabilitation (the "classification claim"); (2) failing to provide him with a toilet brush and pillow (the "conditions claim"); (3) forcing him to wait almost one year for a dental appointment to fill his decayed tooth (the "dental claim"); and (4)

---

[1] Plaintiff is, and has been at all times relevant hereto, incarcerated at Delaware Correctional Center ("DCC") in Smyrna, Delaware. (D.I. 2 at 2)

[2] This document, which measures only a page in length, supplements the information contained in the original complaint, rather than replacing it entirely. (See D.I. 34)

[3] The statute provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory . . . subjects, or causes to be subjected, any citizens of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in the action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

forcing him to wear handcuffs during a dental appointment which has resulted in painful injuries (the "handcuff claim"). (D.I. 2 at 3)

On September 26, 2005, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), the court dismissed as frivolous plaintiff's classification and conditions claims. (D.I. 23) Plaintiff moved for reconsideration of this dismissal (D.I. 24, 26); on November 16, 2005, the court granted said motion only as to the conditions claim (D.I. 36). In March 2006, the State defendants filed a motion to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 53) CMS filed its own motion to dismiss on March 22, 2006.[4] (D.I. 60) In the meantime, plaintiff filed a motion for default judgment as to all of the defendants (D.I. 56), which the court denied as moot on November 15, 2006 (D.I. 97).[5] Finally, on December 4, 2006, the court issued a memorandum opinion and order granting the State defendants' and CMS's motions to dismiss, leaving FCM as the sole remaining defendant in the case at bar. (D.I. 100)

Presently before the court are: (1) plaintiff's motion for partial reconsideration of the court's December 4, 2006 order dismissing from the case the State defendants and CMS (D.I. 103); (2) FCM's motion for summary judgment (D.I. 115); (3) CMS's motion for entry of final judgment (D.I. 121); and (4) plaintiff's three motions to compel (D.I. 102, 106, 116). The court has jurisdiction over the present suit pursuant to 28 U.S.C. § 1331.

---

[4]The IBCC and FCM, meanwhile, filed answers to the amended complaint and proceeded with discovery. (D.I. 67, 74)

[5]The court also dismissed defendant IBCC from the case, since "the only claim asserted against [it], the classification claim, [had] been dismissed." (D.I. 97 at 1 n.2)

## II. BACKGROUND

In the late summer of 2004, plaintiff began experiencing pain and discomfort with one of his teeth. He believed that his tooth filling had fallen out, so he put in a sick call slip at the prison on September 3, 2004, requesting dental treatment. (D.I. 117 at D00016) When one month passed and plaintiff still had not seen a dentist, he filled out another sick call slip on October 2, 2004. (Id. at D00015) Although plaintiff was seen by an FCM dental assistant,[6] he alleges that "[he] did not receive any treatment" and was told there would be an "8-9 month delay to have [his] decayed tooth filled." (D.I. 72 at 1) Dissatisfied by the continued delay in receiving treatment for his tooth, plaintiff submitted a grievance form on October 7, 2004. (D.I. 19, ex. A-19 at 1)

Plaintiff alleges that, on November 2, 2004, he underwent a "medical grievance dental examination" conducted by T.K. Kionke ("Kionke").[7] (D.I. 28, ex. 26; D.I. 72 at 2) Plaintiff had submitted an "Informal Resolution" form containing a handwritten note from Kionke, dated November 2, 2004, stating that plaintiff "[did not] want to sign off [on an informal resolution] until he [got] the treatment," even though Kionke "[w]arned him

---

[6]At that time, FCM was the contract medical provider for DCC.

[7]Plaintiff avers that, during this examination, he was required to "sit on [his] hands and handcuff[ed] in the dentist chair," causing the alleged arm, shoulder, and wrist injuries that form the basis for his handcuff claim. (D.I. 2, "Contin[ue]: Page 4") According to plaintiff, he waited approximately ten months "to see if the pain and injuries . . . would go away" but, in September 2005, he put in a medical sick call to see a doctor regarding his alleged injuries from being handcuffed. Plaintiff was seen by a nurse on October 5, 2005. (D.I. 28 at 1) Plaintiff claims to have told the nurse that "it [felt] like something [was] broke[n] in [his] shoulder." (Id.) The nurse instructed him to stop exercising and gave him a box of pain relievers and a container of muscle cream. (Id.) Plaintiff alleges that the nurse also stated that he might have pinched a nerve. (Id. at 2)

3

[that] fillings take [approximately] 8-9 months." (D.I. 2, ex. A-19 at 2) A hearing for plaintiff's grievance was held on February 2, 2005;[8] three days later, the Medical Grievance Committee ("MGC") recommended unanimously that plaintiff's grievance be denied, as he had been "seen by the dentist and [was] on the waiting list for a filling." (D.I. 117, ex. 22 at 7) Plaintiff appealed the MGC's decision, stating that "it now has been five and a half months and still no treatment. Every time I eat I think my tooth is going to break without being properly filled. The reason for this appeal is the dentist['s] lack of diligence [in] the treatment of my tooth." (D.I. 19, ex. A-20) On March 17, 2005, the Bureau Grievance Officer ("BGO") issued a decision upholding plaintiff's appeal and "recommend[ed] that FCM resolve the dental services availability problem." The BGO also noted that "an 8 to 9 month wait for tooth repair is unacceptable." (D.I. 117, ex. 22 at 5) The Bureau Chief "concur[red] with the recommendation of the BGO" (id., ex. 22 at 6) and, on June 20, 2005, sent plaintiff a letter stating that, "[b]ased upon the documentation presented for our review, we uphold your appeal request. Accordingly, there is no further issue to mediate nor Outside Review necessary as provided by BOP Procedure . . . " (Id., ex. 21)[9]

On July 1, 2005, defendant CMS became the contract medical provider for DCC. (D.I. 34 at 1) Plaintiff's tooth was finally filled on September 7, 2005. According to

---

[8]Plaintiff alleges that, at the grievance hearing, he was again informed that it would take between eight and nine months to have his tooth filled. (D.I. 19, ex. A-20; D.I. 72 at 2)

[9]In the meantime, plaintiff had filed another sick call slip on June 9, 2005, stating: "My tooth filling came out 9 months ago and my teeth need to be filled . . . . This is my 6th attempt to get treatment and [it has been] over 9 months and no treatment yet." (D.I. 117, ex. 27)

4

plaintiff, "[t]he Dentist said plaque developed around the tooth, and [ate] some of the bone away that hold[s] the tooth." (D.I. 22 at 1) Plaintiff further alleges that, due to the year-long delay in treating his tooth (ten months of which was attributable to FCM), "[gingivitis] developed around the tooth and [ate] some of the tooth structure away, and another tooth needed to be filled." Plaintiff claims that "[this] serious medical condition significantly affected [his] ability to eat and talk." (D.I. 72 at 3)

## III. STANDARD OF REVIEW

### A. Motion for Reconsideration

Motions for reconsideration are the "functional equivalent" of motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e). See Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1352 (3d Cir. 1990) (citing Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1986)). The standard for obtaining relief under Rule 59(e) is difficult for a movant to meet, and motions for reconsideration or reargument "shall be sparingly granted," D. Del. LR 7.1.5 (effective June 30, 2007). The purpose of such motions is to "correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Accordingly, a court may only alter or amend its judgment if the movant demonstrates at least one of the following: (1) a change in the controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error of law or fact or to prevent manifest injustice. See id. A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made, see Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993),

5

and may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided," Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990). Reconsideration, however, may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Brambles USA, 735 F. Supp. at 1241 (citations omitted).

### B. Summary Judgment

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The

mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Motion for Reconsideration

Plaintiff's motion for reconsideration requests reinstatement of the handcuff claim, which the court previously held was insufficient to state a claim upon which relief could be granted.[10] (D.I. 100 at 10) The court determined that the act of restraining a prisoner with shackles and handcuffs during dental treatment is a routine security measure in a prison setting.[11] (Id.) Nothing in the record indicated to the court that Young was acting with a culpable state of mind by not removing plaintiff's handcuffs when asked, and the court found that Young was under no duty to do so, since he "was simply following appropriate prison protocol." (Id.)

---

[10]While the exact legal grounds upon which plaintiff's handcuff claim was based were not entirely clear, the court interpreted it to be a claim of excessive force and cruel and unusual punishment under the Eighth Amendment. (D.I. 100 at 8 n.7)

[11]Specifically, the court "[took] judicial notice . . . as to the close proximity of the medical care provider and his or her dental instruments to the inmate during dental examinations and treatments, certainly a situation calling for security measures to be imposed." (D.I. 100 at 10 n.8)

In connection with his motion for reconsideration, plaintiff asserts that the "policy of handcuffing plaintiff during dental treatment/examination was done in a way that cause[d] the plaintiff undue physical discomfort." (D.I. 103 at 1) Plaintiff further alleges (presumably, in response to the court's prior statement that "[p]laintiff admitted in his complaint that he has to be handcuffed everywhere he goes" (D.I. 100 at 10)), that he actually was allowed to walk around without handcuffs on a regular basis, and that "it was only during dental treatment/examination that the plaintiff was handcuffed." (Id.) "Plaintiff argue[s] that this **policy** of handcuffing [him] during dental treatment/ examination was done in a way that cause[d] the plaintiff undue physical discomfort, inflicted physical pain and restricted plaintiff['s] blood circulation." (Id. (emphasis in original))

A motion for reconsideration is not a method to relitigate issues that have already been decided. This, however, is what plaintiff is currently trying to accomplish. As plaintiff has identified no intervening facts, changes in controlling law, or manifest errors of law or fact, the court will deny his motion for reconsideration.[12] (D.I. 103)

---

[12]Again, plaintiff has attempted to resurrect his classification claim, arguing that it was not until he was moved to a high security unit, "for no reason," that he was required to be handcuffed at all times. (D.I. 103 at 2) Plaintiff has also submitted evidence purporting to show that he exhibited "good behavior" while classified at a lower level of security, meaning that there was no legitimate reason to increase his classification level or require him to be handcuffed during dental treatment. (Id.; id., exs. 1-2) As the court has already determined, however, prison inmates do not have a constitutionally protected right to a certain classification status, and the policy of handcuffing prison inmates during dental treatment, a time at which the inmates are in close proximity to dental instruments that could be used as weapons, is a routine security measure. (D.I. 23 at 4-5; D.I. 100 at 10 n.8)

### B. FCM's Motion for Summary Judgment

#### 1. Respondeat superior liability

FCM contends that it is entitled to summary judgment because plaintiff has failed to identify or serve any individual who is responsible for the allegedly unconstitutional lack of medical care described in his complaint. (D.I. 115 at ¶ 10) "It is an established principle that the doctrine of respondeat superior is not an acceptable basis for liability under 42 U.S.C. § 1983." Moody v. Kearney, 380 F. Supp. 2d 393, 398 (D. Del. 2005) (citing Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Swan v. Daniels, 923 F. Supp. 626, 633 (D. Del. 1995) (applying this principle to liability of private corporations that provide medical services for the State)). "In order for [FCM] to be liable, [therefore,] there must be a 'policy' or 'custom' that resulted in the alleged deliberate indifference to plaintiff's serious medical need."[13] Id. (citing Monell, 436 U.S. at 694). "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" Miller v. Corr. Med. Sys., Inc., 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. (citing Andrews, 895 F.2d at 1480; Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir. 1989)).

---

[13] A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

Plaintiff's complaint alleges that, when he sought dental treatment from FCM, "[t]he dental assistant told [him] it would take 9 months to get [a] filling in [his] tooth." (D.I. 2, "Contin[ue]: Page 5"; see also id., "Statement of Claims" at ¶ 5) In addition, plaintiff has submitted a handwritten note from T.K. Kionke, dated November 2, 2004, stating that she had "warned [plaintiff] fillings take [approximately] 8-9 months." (Id., ex. A-19 at 2) On June 13, 2005, plaintiff submitted a letter explaining that he had filed another sick call slip because "[he] was told it [would] take 8-9 months to fill [his] tooth" and it had "been over 9 months and [he had] not had [his] tooth filled yet." (D.I. 18) Although plaintiff grieved this long delay in dental treatment, the grievance was denied because he "[had been] seen by the dentist and [was] on the waiting list for a filling"; however, in upholding plaintiff's grievance on appeal, the BGO "recommend[ed] that FCM resolve the dental services availability problem; inordinate delays lead to more serious and expanding medical related issues, as well as higher costs. An 8 to 9 month wait for tooth repair is unreasonable." (D.I. 19, ex. 21 at 5, 7)

Viewing the underlying facts of the case at bar and all reasonable inferences therefrom in a light most favorable to plaintiff, the court finds that he has proffered evidence sufficient to show the existence of a genuine issue of material fact as to whether FCM had a "policy" or "custom" (in the form of a standard eight to nine month delay for tooth repair) that amounted to deliberate indifference to plaintiff's serious medical needs.

### 2. Exhaustion of administrative remedies

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under [§] 1983 . . . by a prisoner

confined in any . . . correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). FCM contends that "[p]laintiff failed to exhaust all administrative remedies prior to filing this legal action" and, as such, "[i]n the absence of proof of exhaustion of all administrative remedies, plaintiff's complaint must be dismissed. (D.I. 115 at ¶ 12, citing Hyson v. Corr. Med. Serv., Civ. A. No. 02-318-SLR, 2003 WL 292085, at *3 (D. Del. Feb. 6, 2003))

Attached to plaintiff's initial complaint is a DCC "Grievance Report" indicating that, on October 7, 2004, plaintiff filed a grievance because he had gone several months without receiving dental treatment and wanted "to have [his] to[o]th fill[ed] in by the dentist soon[,] before [he lost his] tooth." (D.I. 2, ex. A-19 at 1) On July 7, 2005, plaintiff filed a letter stating that, because he had not received the "dental treatment that [he had] requested[,] thereafter [he] submitted a grievance. Next [his] grievance was heard . . . , and unresolved." (D.I. 19 at ¶ 1; see also id., ex. A-19) Although plaintiff's grievance was initially denied, it was eventually upheld on appeal, thereby ending administrative review of plaintiff's dental claim. (Id. at ¶¶ 2-3; see also id., exs. 22, A-20, and "Department of Correction" letter). Plaintiff, therefore, clearly exhausted the administrative remedies available to him before filing the dental claim, satisfying the requirements of the PLRA.

### 3. Certificate of merit

Pursuant to 18 Del. C. § 6853, healthcare negligence lawsuits filed under the laws of the State of Delaware must be accompanied by an affidavit of merit, signed by an expert witness, "stating that there are reasonable grounds to believe that there has been healthcare medical negligence committed by each defendant." Id. § 6853(a)(1).

11

FCM avers that, because "[his] complaint was not accompanied by either an affidavit of merit or a motion to extend time for filing such an affidavit. . . . [,] plaintiff's state law claims must be dismissed as a matter of law" (D.I. 115 at ¶ 11, citing Jackson v. First Corr. Med. Servs., 380 F. Supp. 2d 387, 392 (D. Del. 2005)); however, as the case at bar does not involve a state law medical negligence claim, plaintiff's failure to file a certificate of merit is inconsequential. Plaintiff's claim against FCM, which was filed pursuant to federal law, is based on FCM's alleged violation of his Eighth Amendment rights. (D.I. 2, 34) Because claimants filing suit under § 1983 are not required to submit an affidavit of merit, FCM's motion for summary judgement on that ground will be denied.

### C. CMS's Motion for Entry of Judgment

CMS has moved for the entry of partial final judgment under Fed. R. Civ. P. 54(b). (D.I. 121) Rule 54(b) states, in pertinent part:

> When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed. R. Civ. P. 54(b). Although the decision whether to certify as a final judgment rests in the discretion of the trial court, see Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437 (1956), the Supreme Court in Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1 (1980), suggested two relevant factors a trial court should consider in deciding whether there is just reason for delay: (1) judicial administrative interests; and (2) the equities of the parties involved, see id. at 8. Consideration of judicial administration

12

counsels against piecemeal review that would force appellate courts to decide the same issues on subsequent appeal. See id.

According to CMS, "there is no just reason to delay the entry of a final judgment" in its favor, as "[CMS] was dismissed because liability did not lie with [it]." In addition, CMS avers that "[e]ntry of a final judgment . . . [in its favor] would not hinder the progression of plaintiff's still active case." (D.I. 121 at ¶ 5) Upon consideration of the relevant factors and the record presented, however, the court is not persuaded that "there is no just reason for delay." Fed. R. Civ. P. 54(b). CMS's motion, therefore, is denied.

### D. Plaintiff's Motions to Compel[14]

On November 8, 2006, plaintiff filed a motion to compel discovery from FCM. (D.I. 95) On November 15, 2006, the court granted in part plaintiff's motion, requiring FCM to respond to discovery request numbers 2, 4, and 5[15] by December 15, 2006. (D.I. 97) FCM filed responses and documents before the expiration of the December

---

[14]Plaintiff's first motion to compel, filed December 1, 2006, was directed at the State defendants. (D.I. 102) As the claims against those defendants have already been dismissed in their entirety, this motion is denied as moot.

[15]These particular paragraphs requested information related to FCM's "policies, directors, custom/procedure or instructions to staff" concerning filling plaintiff's or other DCC inmates' teeth from September 5, 2004 to September 7, 2005; the duties of FCM "insofar as they pertain to ensuring that [plaintiff's or other inmates'] tooth [was] filled in a timely manner"; and "the [d]ates with all names, titles and duty" of the FCM staff members "[who] responded to, examined, treated, [or] filled plaintiff['s] tooth from September 5, 2004 to September 7, 200[5]." (D.I. 95, ex. 1 at ¶¶ 2, 4, 5)

15th deadline (D.I. 114, 115); despite this, on December 21, 2006 and March 8, 2007, plaintiff filed two more motions to compel (D.I. 106, 116).[16]

Plaintiff's first motion alleges "that the medical records submitted by FCM do not relate to the time fram[e] or the claim in dispute ([September] 2004 to [September] 2005 regarding plaintiff['s] tooth problems) in regard to discovery request number 5." (D.I. 106 at 2) While FCM submitted copies of plaintiff's sick call slips from September 3 and October 2, 2004, both of which contain a notation that plaintiff was seen by dental personnel on October 7, 2004, plaintiff avers that FCM has identified neither the person who wrote those notes[17] nor the dental personnel who examined and/or treated plaintiff during the time period in question. (D.I. 106 at 2) Plaintiff's motion, therefore, "request[s] that the . . . court order FCM to produce plaintiff['s] discovery request number[s] 5 and 4," as well as entering "judgment in plaintiff['s] favor p[u]rsuant to Fed. R[.] Civ[.] P[.] Rule 37 and grant[ing] plaintiff['s] complaint." (Id.)

On November 22, 2006, plaintiff filed an "Additional Discovery Request" directed at FCM. (D.I. 99) On March 8, 2007, having failed to receive from FCM a satisfactory response to discovery request number 21,[18] plaintiff filed a second motion to compel.

---

[16]FCM has not filed a response to either of these motions.

[17]The entries appear to have been made by someone with the initials "S.W." The person's middle initial is illegible. (D.I. 104 at D00015-D00016)

[18]This request directed FCM to

[s]tate the name, title and duty of the . . . [FCM] staff member and[/]or person respons[i]ble for . . . FCM regulations and policy, insofar as the staff member or person oversees the regulations and policy in ensuring that filling [plaintiff's or any other inmate's] tooth is done in a timely man[ner] that do[es] not cause undue suffering and pain. Produce the

(D.I. 116) Plaintiff's motion seeks information related to: (1) "the dates with all names, title and dut[ies] of all FCM staff/person that had personal involvement in responding to, examined, treated, [or] filled plaintiff['s] tooth in regard to the matter and time fram[e] in dispute"; (2) "the name(s), title and dut[ies] of FCM staff[] and [the] person who is individually responsible for . . . delaying plaintiff['s] dental treatment/filling for 8 to 9 months in regard to the matter and time fram[e] in dispute[,] September 3, 2004 to June 30, 2005"; and (3) "the reason why FCM delayed filling plaintiff['s] tooth for . . . 8 to 9 month[s]." (Id.)

The court finds plaintiff's discovery requests to be relevant and appropriately limited to the remaining issues in the litigation. Therefore, plaintiff's motions to compel (D.I. 106, 116) are granted.

## V. CONCLUSION

For the reasons state above, plaintiff's motion for reconsideration and FCM's motion for summary judgment will be denied. CMS's motion for entry of judgment is denied. Plaintiff's motion to compel against the State defendants is denied as moot, and plaintiff's remaining two motions to compel discovery from FCM are granted. An appropriate order shall issue.

---

document from 10-7-2004 ([September] 2004 to [September] 2005).
(D.I. 99 at ¶ 21)